UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KAMILLA PECK,

     *Plaintiff,*

v.

COUNTY OF ONONDAGA, NEW YORK;
ONONDAGA COUNTY SHERIFF EUGENE
CONWAY; CHIEF KATHERINE TRASK;
SERGEANT JONATHAN SEEBER; DEPUTY
KELLY SEEBER; CHIEF DEPUTY SUSAN
DEMARI; DIRECTOR OF EMPLOYEE
RELATIONS DAWN CURRY-CLARRY;
CHIEF DEPUTY ESTEBAN GONZALEZ;
CAPTAIN PAULA PELLIZZARI; and
PAUL SMITH,

     *Defendants.*

**DECLARATION IN SUPPORT
OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Civ. No. 21-cv-0651

(DNH/TWD)

---

**JOHN D'EREDITA**, pursuant to 28 U.S.C. §1746, declares the following to be true and correct, under penalty of perjury of the laws of the United States:

     1.    I am a former Captain in the Custody Department of the Onondaga County Sheriff's Office ("OCSO"). I make this Declaration in support of the Defendants' instant Motion for Summary Judgment in the above-captioned matter, which I understand to be an employment-discrimination and civil-rights lawsuit brought by Onondaga County Sheriff's Deputy Kamilla Peck (the "Plaintiff").

     2.    I make this Declaration on the basis of my own knowledge of and familiarity with the facts and circumstances of the events and matters described herein.

3.      I originally joined the OCSO as a Sheriff's Deputy (Custody) in 1986 and was promoted through the ranks of Sergeant, Lieutenant, and ultimately to Captain in 2017, before retiring at the end of 2022.  Broadly speaking, the Custody Department is responsible for all aspects of the detainment of individuals who are either awaiting trial, or awaiting sentencing, at the Onondaga County Justice Center; including their reception and booking, housing, transport (for example, to court or outside medical appointments), feeding, security, recreation and visitation, and so on.  The Department also has its own internal administrative divisions, dealing with personnel issues such as scheduling, training, supply, and incident investigation.

4.      I am familiar with the Plaintiff through her work as a Custody Deputy, although I did not serve as her direct supervisor.  I did sit on at least two promotion "panels" or "boards" which were assembled for the purpose of appointing one or more Custody Sergeants in 2017 and 2019, both of which interviewed the Plaintiff among other candidates.  It is my understanding that the Plaintiff has claimed as part of her pending lawsuit, that she was unlawfully denied promotion following these promotion boards.

5.      In the course of my career, I sat on numerous promotion boards for Custody Department promotions to Sergeant and Lieutenant.  (Boards are assembled from available personnel; as a rule, the members of the board are all above the rank being promoted to—so, for example, a board for promotion to Sergeant would consist of Lieutenants and above.  As a Captain, I would be able to sit on any board for initial Deputy appointments, or for promotion to Sergeant or Lieutenant.)  I also chaired a number of these boards, although the designation of an individual as chair does not give him or her any additional power over the board's ultimate choice of candidates to recommend for promotion.

6.      Civil Service examination scores are used to generate a list of potential candidates for promotion and to extend invitations to interview for vacancies (although candidates can and do sometimes decline to interview even when they are eligible). Although a candidate's Civil Service examination score often comes up in the promotion board process (either because it will be mentioned during an interview, or because it is contained in the candidate's personnel materials that are reviewed by the board), these scores, standing alone, do not have significant weight in the promotion process—their primary value is to allow a candidate to "get a foot in the door" to the promotion process, by establishing a cutoff level below which an individual will not even be considered.

7.      A variety of materials are available for the board to review in advance of the panel's interviews, including human resources files and supervisor memoranda (which are memos that record notable positive or negative performance—considered a part of the candidate's training history). Panel members also draw on information about the candidates that they have learned on the job—either through their own interactions with a candidate, or through other personnel reports. Candidates may submit resumes and other materials to the board for its consideration, if they wish.

8.      In my experience, there is no single qualification or historical incident that will lead a promotion board to score a candidate particularly high or low; all aspects of the candidate's background and performance are weighed. For promotion to Sergeant, the board's focus will be on assessing how all these elements impact or signal their preparedness to serve as a first-line supervisor for Deputies throughout the Department—which tends to favor candidates who know a great deal about the Department's various operations, rather than about one narrow aspect. (For example, if a candidate has never worked in Housing, he or she may have difficulty directing a response to an emergency situation arising in a housing unit.)

9.      This focus also tends to favor candidates who have a history of good working relationships with co-workers and supervisors, since Sergeants are relied on to be able to direct subordinates, as well as resolve issues that might arise between subordinates.

10.     This focus is reflected in the scoring system used in candidate interviews, where all candidates are asked the same set of questions and each response is scored on a numerical scale (mostly 1-10), with a 20-point section for overall background.   Many of the questions ask candidates how they would respond as a Sergeant to various scenarios that might arise in the Justice Center (or elsewhere—for example in the transport of an inmate).   Candidates who have worked across a variety of assignments in Custody, or secured training or other exposure to other facets of the Department's operations (for example, by cross-training outside their own assignments, serving on special teams, or serving as Field Training Officers or "FTOs"), often have an advantage in terms of their ability to respond to these scenarios.

11.     The clarity and comprehensiveness of candidate answers to interview questions was also important to me—as I understand it was to other panel members—because Sergeants are expected to be able to give clear and understandable directions, explanations, and counseling to their subordinates, and to write quality reports for their superiors documenting incidents or the results of interviews or investigations.

12.     My 2019 promotion board interview packets for the Plaintiff, as well as other candidates for that promotion cycle, show that the Plaintiff struggled with her interview—at least in part as a likely consequence of having limited experience with Department operations. (Promotion packets for the Plaintiff, as well as eventual promotees Ben Okun and Loretta McCarty, are annexed hereto as **Exhibits A, B, and C**, respectively.)   I awarded the Plaintiff 15 points out of a possible 20 (a good score) for her general background, which included serving on

special assignment outside of the Department (in Community Relations) and earning certification as a car-seat installation technician. However, her experience *within* the Department and its operations was limited to housing assignments.

13.    This meant that the Plaintiff was able to deliver a very good answer to a question about the job duties of a Housing Sergeant (for which I awarded her eight out of ten points), but it also meant the Plaintiff had trouble responding to scenario-based questions, where she lost a number of possible points. Even with regard to one scenario-based question where she generated a good answer (regarding an inmate restraint), it was disorganized—which cost her *at least* a point in view of the need for Sergeants to communicate in an organized, clear fashion. The Plaintiff also lost some points on a later question asking why she should be recommended for promotion over the other candidates, when she failed to tie her relevant experience to the position she sought, instead making some conclusory assertions about being the top candidate—which was a good expression of self-confidence, but did not offer the panel fact-based reasoning.

14.    I awarded the Plaintiff a total of 69 points in the course of her 2019 interview, sixteen points behind the eventual top candidate (Ben Okun, who I understand is Mexican-American), who was recommended to the Chief Custody Deputy for promotion. (The Chief is able to reject the promotion board's recommendations, or seek more information about the candidates and the basis for the recommendation; however, I do not recall Chief Gonzalez doing so in this instance, or in any other. Likewise, it is my understanding that the Sheriff, who gives the final approval to appoint a candidate to a vacancy, is able to reject a board's recommendation.) My score for Deputy Okun reflected his extensive background in a wide array of Department operations, including serving as an FTO; on a SERT (Sheriff's Emergency Response Team) team;

graduating from the Police Academy; and working with the gang task force—and his ability to bring that experience into clear, well-thought out answers.

15.     I scored another eventual promotee, Deputy McCarty, only eight points higher than the Plaintiff, reflecting how close the scoring can be, and how the loss of one or two points on a response can be very significant to the ultimate outcome.  (Deputy McCarty, like the Plaintiff, had spent her career in Housing—a fact which netted her the same fifteen points for background that I awarded the Plaintiff—but she had also served as an FTO, and her answers to the other questions reflected the fact that she had acquired a more extensive understanding of operations *outside* Housing.)

16.     I also understood that the Plaintiff had had a documented personality clash with a former supervisor, Sergeant Jane DeMarco, which was a red flag when assessing her ability to relate to subordinates and resolve conflicts with or between them.

17.     Although it is my understanding that the 2017 promotion packets for the Sergeant vacancy the Plaintiff competed for are no longer available, and I do not have my specific scores available from that promotion cycle, I did score the Plaintiff and her competitors based on the same set of considerations—i.e., breadth of experience and, in the Plaintiff's case, the narrowness of her experience impacting her ability to answer questions about matters outside the scope of her own experience.

18.     After a promotion board has met and made its recommendation (and the ultimate appointment has been made), the panel members—particularly the chair—usually extend the opportunity to candidates to ask questions about how they were scored; what their perceived strengths and weaknesses were; and how they can improve for a future promotion cycle.  I chaired

the 2017 promotion panel that the Plaintiff participated in, but she never contacted me to discuss the result and what to do to position herself for a Sergeant promotion in the future.

19.      It is my understanding that the Plaintiff alleges she was denied promotion in 2017 and 2019 as the result of racial discrimination.  This is untrue.  The panel applied the same scoring rubric and asked the same questions of every candidate regardless of race or any other protected characteristic.  Indeed, the Plaintiff scored quite well in some regards—just not consistently enough throughout the interview process to overcome the experience and answers offered by other candidates.  Our determination and recommendations on both occasions were simply reflective of the best qualifications and interview performance out of those specific groups of candidates.

Dated:  February 7, 2023

JOHN D'EREDITA

# EXHIBIT A



## ONONDAGA COUNTY SHERIFF'S OFFICE
## CUSTODY DEPARTMENT
### Sergeant's Promotional Review Board

### Section 1 – Background – 20 points

Name: PECK, KAMILLA                     Date: 2-7-19

Current assignment: COMMUNITY RELATIONS          Years of Service: April 2006

Commendations: DE-ESCALATION INCIDENTS / OUTREACHES / COMMUNITY SERVICE/DR. M.L.K. JR AWARD

Past discipline: ~~FROM SUPERVISOR~~ MEMOS - LATE

Sick leave use in the past 12 months: ~~DC~~ 3.5 DAYS

LWP / AWOL in the past 12 months: 20 mos. ?

Education (College, high school, GED) PREP. SCHOOL IN JAMAICA - LEMOYNE COLLEGE

Training, FTO, Certificates:
REPORT WRITING / CRITICAL THINKING / CAR-SEAT TECH SCHOOL

Points  15

### Section 2 - 10 points each (40 points possible)

1) What are the job duties of a Housing Unit Sergeant?

COMPLETE SHIFT SCHEDULE / ASSIGN STAFF - INTERACT W/ INMATES / COMPLETE

ANNUAL EVALUATIONS / CONDUCT SAFETY TOURS - REPORTING TO W.C.

TALKS ABOUT ACCOUNTABILITY - I/M OR STAFF MISCONDUCT

* VERY GOOD ANSWER                    Points  8

DEF 001688

2) Tell us three specific characteristics you possess, that will make you a good supervisor. Explain each characteristic in detail, with examples of how you have used it as a deputy.

EFFECTIVE COMMUNICATOR - 100% COMMUNICATE

LEADER - LEAD BY EXAMPLE / ROLE MODEL

VERY POSITIVE PERSON - COME IN W/ POSITIVE ATTITUDE / AND EFFICIENT

_____ Points  7

3) As a Sergeant, what are three goals you would like to accomplish?

EMBRACE ACCREDITATION - MAKES A BETTER ENVIRONMENT

EFFECTIVE REPORT WRITING

GIVING BACK TO AGENCY - HELP NEW DEPUTIES

_____ Points  8

4) With your time and experience, what current or former supervisor do you look up to? Why? *(The why is more important than the who!!)*

SGT. MAHONEY - POSITIVE PERSON / APPROACHABLE / EFFICIENT

- GAVE GREAT CONCERN W/ HIS STAFF.

_____ Points  7

DEF 001689

**Section 3 – Scenarios - 10 Points each (30 points possible)**

5) You respond to a radio call asking for assistance in the Booking area. When you arrive, you observe an inmate on the floor, pepper sprayed, and being held down by four deputies. You are the only supervisor present, what do you do?

- **Acceptable Responses:**
- Have responding SERT members assist
- ✗ Direct staff to handcuff/ Apply ERBs
- ✗ Alert the control supervisor (810)/ SERT and the Watch commander ✓
- Have a staff member retrieve a camera
- ✗ Decontamination
- ✗ Notify the nurse to respond
- ✗ Once under control determine who was involved / conduct an investigation
- ✗ Require documentation (reports and Use of force)
- ✗ Check for injuries to staff, <u>inmates</u>
- Check for any hazardous material (blood) exposure
- Review available video

SECURE AREA / SPEAK W/ INMATE AND ATTEMPT TO DE-ESCALATE

ANSWER WAS GOOD - NOT VERY ORGANIZED.

Points 7

6) While completing a tour you receive an inmate complaint form directly from an inmate. The form alleges the Deputy on the previous shift did not feed him lunch nor provide him with recreation. What do you do?

**Acceptable Responses:**
- Review Reports
- Review the log book
- ✗ Review video
- Document findings, or lack of, on the complaint form
- ✗ Interview the inmate
- Provide recreation if found to have not been offered earlier
- ✗ Document any discovered misconduct on a miscellaneous report and forward to the Watch Commander

TELL INMATE I WOULD LOOK INTO IT | GET AHOLD OF INJURED DEPUTY AND REQUEST REPORT

DEF 001690

_____

_____

_____ Points ⟨2⟩

**7)** A Deputy in your squad tells you she has recently been having arguments with another deputy on the Watch. The deputy describes the other person as "unreasonable and aggressive". The deputy asks not to be assigned with the other deputy.

    **Acceptable Responses:**
- ☒ Notify the Watch Commander
- ☒ Order the deputy to document specific incidents she has had with the other deputy.
- - Ask if there are any witnesses
- - Determine if the incident rises to the level of harassment
- ☒ Speak with the other deputy, obtain documentation
- ☒ Suggest mediation between the two deputies to your Lt
- - Direct both deputies, that while they are at work, they are to be professional and treat each other with respect (document meeting)
- - No change in work assignments, unless harassment has been identified.

ASK DEPUTY TO ELABORATE
_____

_____

_____

_____

_____ Points 5

### Section 5 – 10 Points (10 points possible)

**8)** There are several candidates for promotion, why should we recommend you to Sheriff Conway?

I AM TOP CANDIDATE. I AM LOOKING TO LEAD w/ EXCELLENCE, INTEGRITY AND BUILD AN EFFICIENT STAFF
_____

_____

_____

_____

_____

_____ Points _6_

Section 1 point total: _15_

Section 2 point total: _30_

Section 3 point total: _18_

Section 4 point total: _6_

~~Section 5 point total:~~ _____

**Total Rating:** _69_

Comments:

_____

_____

_____

_____

_____

_____

Board member: _Deresta_____

DEF 001692

# EXHIBIT B

ONONDAGA COUNTY SHERIFF'S OFFICE
CUSTODY DEPARTMENT
Sergeant's Promotional Review Board

85

---

## Section 1 – Background – 20 points

Name: OKUN, BED                          Date: 2-14-19

Current assignment: _____ Years of Service 10

Commendations: 1 - EMPLOYEE OF MONTH    2 - DEPUTY OF MONTH

Past discipline: 3 - NEGATIVE SUPERVISOR MEMOS

Sick leave use in the past 12 months: 5

LWP / AWOL in the past 12 months: 1 (SICK DAY BETWEEN HOLIDAY)

Education (College, high school, GED) FOWLER HS. / OCC - CRIMINAL JUSTICE ASS DEGREE

Training, FTO, Certificates:

SERT - FTO - GANG TASK FORCE TRAINING  CELL BLOCK SURVIVAL
MENTOR PROGRAM - POLICE ACADEMY

Points 18

## Section 2 - 10 points each (40 points possible)

1) What are the job duties of a Housing Unit Sergeant?

MAKE SURE STAFF HAVE PROPER EQUIPMENT - 2 TOURS DAY / INSPECTIONS ON SUNDAY
SUPPORT STAFF / COMMUNICATE W W.C. / GRIEVANCES / DELEGATE
MENTOR TO STAFF

Points 8

DEF 001703

2) Tell us three specific characteristics you possess, that will make you a good supervisor. Explain each characteristic in detail, with examples of how you have used it as a deputy.

GREAT WORK ETHIC - WORK WITH EVERYBODY

INTEGRITY - DOES RIGHT THING -

PAY ATTENTION TO DETAIL

LEADING BY EXAMPLE - HARDY - POSITIVE ATTITUDE                    Points 9

3) As a Sergeant, what are three goals you would like to accomplish?

MORALE - LEADING BY EXAMPLE

MENTORING - CREATE A MORE OPEN DOOR POLICY ( APPROACHABLE )

_____

_____                                                  Points 7

4) With your time and experience, what current or former supervisor do you look up to? Why? *(The why is more important than the who!!)*

SGT. MAHADY - LEADS BY EXAMPLE - WOULDN'T ASK STAFF TO

DO WHAT HE WOULDN'T DO HIMSELF / SGT LACE - CONSISTENT

_____

_____                                                  Points 7

DEF 001704

**Section 3 – Scenarios - 10 Points each (30 points possible)**

5) You respond to a radio call asking for assistance in the Booking area. When you arrive, you observe an inmate on the floor, pepper sprayed, and being held down by four deputies. You are the only supervisor present, what do you do?

- **Acceptable Responses:**
- Have responding SERT members assist
- ☒ Direct staff to handcuff/ Apply ERBs
- ☒ Alert the control supervisor (810) / SERT and the Watch commander
- Have a staff member retrieve a camera
- ➤ Decontamination
- ☒ Notify the nurse to respond
- ☒ Once under control determine who was involved / conduct an investigation
- ☒ Require documentation (reports and Use of force)
- ☒ Check for injuries to staff, inmates
- ☒ Check for any hazardous material (blood) exposure
- Review available video

SECURE BOOKING AREA / MAKE SURE FM IS ON SIDE

GREAT OVERVIEW! STEP BY STEP PROCESS

Points 9

6) While completing a tour you receive an inmate complaint form directly from an inmate. The form alleges the Deputy on the previous shift did not feed him lunch nor provide him with recreation. What do you do?

**Acceptable Responses:**
- Review Reports
- ☒ Review the log book
- ☒ Review video
- ☒ Document findings, or lack of, on the complaint form
- ☒ Interview the inmate
- Provide recreation if found to have not been offered earlier
- ☒ Document any discovered misconduct on a miscellaneous report and forward to the Watch Commander

SEE IF OFFICER WAS WRONG IS RESOLVE COMPLAINT.

IF HE HASN'T BEEN FED OR REC / GIVE IT TO HIM

DEF 001705

_____

_____

_____ Points  9

**7)** A Deputy in your squad tells you she has recently been having arguments with another deputy on the Watch. The deputy describes the other person as "unreasonable and aggressive". The deputy asks not to be assigned with the other deputy.

**Acceptable Responses:**
- Notify the Watch Commander
- Order the deputy to document specific incidents she has had with the other deputy.
- Ask if there are any witnesses
- Determine if the incident rises to the level of harassment
- Speak with the other deputy, obtain documentation
- Suggest mediation between the two deputies to your Lt
- Direct both deputies, that while they are at work, they are to be professional and treat each other with respect (document meeting)
- No change in work assignments, unless harassment has been identified.

REVIEW CAMERAS IF NEEDED

_____

_____

_____

_____ Points  9

### Section 5 – 10 Points (10 points possible)

**8)** There are several candidates for promotion, why should we recommend you to Sheriff Conway?

10 yrs. EXPERIENCE IN HOUSING / CONTROL / TRANSPORT / BOOKING FTO, MENTOR PROGRAM   SERT / EXPERIENCE IN PATROL

_____

_____

_____

DEF 001706

Points 9

Section 1 point total: 18

Section 2 point total: 31

Section 3 point total: 27

Section 4 point total: 9

Section 5 point total: _____

**Total Rating:** 45

Comments:

OUTSTANDING INTERVIEW!

Board member: _____

DEF 001707

# EXHIBIT C



### ONONDAGA COUNTY SHERIFF'S OFFICE
### CUSTODY DEPARTMENT
### Sergeant's Promotional Review Board

#### Section 1 – Background – 20 points

Name: L. M$^c$CARTY                    Date: 2-14-19

Current assignment: _____ Years of Service  10 y/s

Commendations: _____

Past discipline: SUPERVISOR MEMO'S FOR CELLPHONE ON ER TIER.

Sick leave use in the past 12 months: 5 DAYS

LWP / AWOL in the past 12 months: ⊖

Education (College, high school, GED)  HIGH SCHOOL

Training, FTO, Certificates:

WOMEN IN LAW ENFORCEMENT – CELLBLOCK SURVIVAL  YOUTH MENTAL HEALTH

FTO –

Points  15

#### Section 2 - 10 points each (40 points possible)

1) What are the job duties of a Housing Unit Sergeant?

KEEP STAFF ACCOUNTABLE – REPORTS, LOG-BOOK ENTRIES, SPECIAL CONDITION

INTERACT IN P.U. WITH STAFF (HEALTH/MENTAL HEALTH) MAKE SURE STAFF

ALL IN A GOOD STATE OF MIND / RESPOND TO INCIDENTS / SIGN OFF ON

REPORTS
                                    Points  8

DEF 001718

2) Tell us three specific characteristics you possess, that will make you a good supervisor. Explain each characteristic in detail, with examples of how you have used it as a deputy.

VERY HARD WORKING - LOOK OUT FOR CO-WORKERS

HONEST / INTEGRITY

LOYALTY - MARRIED 8 YRS - / JAILS IS MY FAMILY AS WELL

_____ Points 8

3) As a Sergeant, what are three goals you would like to accomplish?

KEEP PEOPLE MORE ACCOUNTABLE FOR THEIR ACTIONS

MORE PROFESSIONALISM.

CLEANLINESS.

_____ Points 8

4) With your time and experience, what current or former supervisor do you look up to? Why? *(The why is more important than the who!!)*

SGT WITEK - SHE CONSISTENT - SHE UNDERSTANDS LIABILITY

_____ Points 7

DEF 001719

**Section 3 – Scenarios - 10 Points each (30 points possible)**

5) You respond to a radio call asking for assistance in the Booking area. When you arrive, you observe an inmate on the floor, pepper sprayed, and being held down by four deputies. You are the only supervisor present, what do you do?

- **Acceptable Responses:**
- Have responding SERT members assist
- Direct staff to handcuff/ Apply ERBs
- Alert the control supervisor (810) / SERT and the Watch commander
- Have a staff member retrieve a camera
- Decontamination
- Notify the nurse to respond
- Once under control determine who was involved / conduct an investigation
- Require documentation (reports and Use of force)
- Check for injuries to staff, inmates
- Check for any hazardous material (blood) exposure
- Review available video

ONCE SECURE IF 4 STAR ARRST NEEDED HAVE ONE STAFF MEMBER W/
INMATE ON HIS SIDE

_____

Points 9

6) While completing a tour you receive an inmate complaint form directly from an inmate. The form alleges the Deputy on the previous shift did not feed him lunch nor provide him with recreation. What do you do?

Acceptable Responses:
- Review Reports
- Review the log book
- Review video
- Document findings, or lack of, on the complaint form
- Interview the inmate
- Provide recreation if found to have not been offered earlier
- Document any discovered misconduct on a miscellaneous report and forward to the Watch Commander

ASK IF HE HAS REPORTED TO DEPUTY

VERY GOOD!

DEF 001720

_____

_____

_____ Points  9

7) A Deputy in your squad tells you she has recently been having arguments with another deputy on the Watch. The deputy describes the other person as "unreasonable and aggressive". The deputy asks not to be assigned with the other deputy.

　　　**Acceptable Responses:**
- ✗ Notify the Watch Commander
- ✗ Order the deputy to document specific incidents she has had with the other deputy.
- Ask if there are any witnesses
- Determine if the incident rises to the level of harassment
- ✗ Speak with the other deputy, obtain documentation
- Suggest mediation between the two deputies to your Lt
- Direct both deputies, that while they are at work, they are to be professional and treat each other with respect (document meeting)
- <u>No change in work assignments</u>, unless harassment has been identified.

STRUGGLED W/ ANSWER A BIT - INDICATED MAY KEEP THEM SEPERATED

_____

_____

_____ Points  6

**Section 5 – 10 Points (10 points possible)**

8) There are several candidates for promotion, why should we recommend you to Sheriff Conway?

I HAVE MORE TIME IN HOUSING THAN ANY OTHER CANDIDATE. HOUSING IS WHAT I AM GOOD AT

DEF 001721

_____ Points _7_

Section 1 point total: _15_

Section 2 point total: _31_

Section 3 point total: _24_

Section 4 point total: _7_

Section 5 point total: ____

**Total Rating:** _77_

Comments:

VERY GOOD INTERESTED - COMPLETE THOUGHTFUL ANSWERS!

Board member: _____

DEF 001722