UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KAMILLA S. PECK,

    *Plaintiff*,

  -v-                                5:21-CV-651

COUNTY OF ONONDAGA, NEW YORK; EUGENE CONWAY, Onondaga County Sheriff; KATHERINE TRASK, Chief; JONATHAN SEEBER, Sergeant; KELLY SEEBER, Deputy; SUSAN DeMARI, Chief Deputy; DAWN CURRY-CLARRY, Director of Employee Relations; PAUL SMITH, Human Resources Manager; PAULA PELLIZZARI, Captain; ESTEBAN GONZALEZ, Chief, JOHN DOE(S), and JANE DOE(S), all in their individual and official capacities as representatives of Onondaga County and/or the Onondaga County Sheriff's Office,

    *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| BOSMAN LAW FIRM, LLC<br>*Attorneys for Plaintiff*<br>3000 McConnellsville Road<br>Blossvale, New York 13308 | AJ BOSMAN, ESQ.<br>ROBERT JAMES STRUM, ESQ. |

BOLAÑOS LOWE PLLC  KYLE W. STURGESS, ESQ.
*Attorneys for Defendants*
11 Schoen Place, Fifth Floor
Pittsford, New York 14534

DAVID N. HURD
United States District Judge

## ORDER DENYING RECONSIDERATION

### I. INTRODUCTION

This is an employment discrimination action brought by plaintiff Kamilla Peck ("Peck" or "plaintiff") concerning her time working in the Onondaga County Sheriff's Office (the "Sheriff's Office"). Following this Court's August 19, 2021 Order, Dkt. No. 20, which dismissed several claims (as well as defendant Undersheriff Jason Cassalia ("Cassalia")), plaintiff filed an amended complaint consistent with its directives, Dkt. No. 24 ("Am. Compl."). The amended complaint advanced nine causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296; and 42 U.S.C. § 1983 ("Section 1983"). *See generally id.* The remaining defendants[1] answered, *see* Dkt. No. 26, and moved for summary judgment, Dkt. No. 75.

---

[1] The amended complaint brings claims against a host of defendants: Onondaga County (the "County"), Sheriff Eugene Conway ("Conway"), Chief Katherine Trask ("Trask"), Sergeant Jonathan Seeber ("Jonathan"), Deputy Kelly Seeber ("Kelly"), Chief Deputy Susan DeMari ("DeMari"), Director of Employee Relations Dawn Curry-Clarry ("Curry-Clarry"), Human Resources Manager Paul Smith ("Smith"), Captain Paula Pellizzari ("Pellizzari"), Chief Esteban Gonzalez ("Gonzalez"), as well as an unspecified number of John and Jane Doe defendants (the "Does" and, together with each defendant other than the County, the "Individual Defendants") (collectively "defendants").

2

On September 6, 2023, the Court entered an order granting defendants' motion for summary judgment in part and denying it in part. Dkt. No. 90 (the "Order").

On September 20, 2023, Peck moved for partial reconsideration of the Order. Defendants have opposed. On October 18, 2023, plaintiff sought leave to file a reply memorandum and attached a proposed memorandum. The Court grants plaintiff's leave request, has reviewed plaintiff's proposed reply, and will now consider the motion on the basis of the parties' submissions without oral argument.

## II. DISCUSSION[2]

Peck's motion for reconsideration asks the Court to "grant reconsideration and reinstate plaintiff's hostile work environment claims and her U.S.C. § 1983 Equal Protection retaliation claim." Dkt. No. 91-2 at 4. In plaintiff's view, the Court misapplied the standard for the former species of claim, and erroneously determined that the Equal Protection clause does not protect against retaliation due to complaints of racial discrimination.

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of

---

[2] The relevant factual allegations are contained in the Order.

law or to prevent manifest injustice." *Grant v. AM Commc'ns, LTD*, 2022 WL 20650234, at *1 (N.D.N.Y. Mar. 10, 2022) (citations omitted).

These are demanding requirements. *Grant*, 2022 WL 20650234, at *1 (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). Reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Id.* (citing *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Accordingly, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (citing *Shrader*, 70 F.3d at 257).

Upon review, Peck's motion will be denied with respect to her hostile work environment claims and granted with respect to her § 1983 Equal Protection retaliation claim.

As for Peck's first argument regarding her NYSHRL hostile work environment claims, it is true that the standard was relaxed on October 11, 2019. *See, e.g.*, *Friederick v. Passfeed, Inc.*, 2022 WL 992798, at * 6 (S.D.N.Y. Mar. 31, 2022) (quoting *Moazzaz v. MetLife, Inc.*, 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021)). The challenge with applying the updated standard here is that the NYSHRL amendments were not retroactive in their

4

application, and although plaintiff claims her "hostile work environment claims are based largely on conduct occurring after October 11, 2019 and therefore are governed by the more lenient standard," her allegations rarely pinpointed dates for any of the statements and interactions she found objectionable.

However, even assuming the new NYSHRL standard would apply to Peck's claims, the conclusion in the Order would not change.  Analyzing plaintiff's hostile work environment claims under any standard—however lenient—reveals that plaintiff elicited absolutely no evidence from the record in opposing summary judgment.  Under any standard, it was up to plaintiff to oppose summary judgment by highlighting specific record evidence that created issues of material fact, not simply recite generalized allegations with no citations in the face of a voluminous record.[3]  Put simply, plaintiff framed her arguments in opposition to summary judgment in the most conclusory terms and evaded meaningful analysis under any standard.[4]

Peck's representation that she was "unaware" of any "format" requirement that a memorandum of law in opposition to summary judgment contain references to evidence is not well taken.  Plaintiff cites to *Amnesty America*,

---

[3] As discussed further *infra*, plaintiff cited to the record at certain points of her opposition memorandum, but not others, showing that she knew how to do so.

[4] Now, on reconsideration, plaintiff cites to additional portions of the record in an attempt to articulate how she supported her claims.  Of course, she included very few of these citations in her actual summary judgment opposition brief.

5

288 F.3d 467, 471 (2d Cir. 2002), to suggest that the Court "automatically granted" summary judgment as a sanction due to her failure to cite certain evidence, and that it was clear error to do so.  In drafting the Order, the Court thoroughly considered *Amnesty America*—in fact, certain rule statements from cases cited in the Order can be traced back there.  *See Guzman v. Crothall Healthcare Inc.*, 2021 WL 5048993, at *9 (E.D.N.Y. Sept. 29, 2021) ("the Court is not obligated to perform an independent review of the record to find proof of a factual dispute") (citing *Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 101 n.10 (S.D.N.Y. 2012), which in turn cites *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)).

Ultimately, although *Amnesty America* is on point in some ways, namely in noting the above principle quoted by *Guzman*, *see Amnesty*, 288 F.3d at 470, the circumstances in *Amnesty America* also differed in certain key respects.  There, the plaintiffs' opposition memorandum noted facts that they claimed were in dispute and material and referred generally to evidence in the record, but throughout the memorandum they "***never*** cite[d] to a particular exhibit." 288 F.3d at 469 (emphasis added).  Because the plaintiffs did not offer a single record citation in their opposition brief, the trial court rendered its decision as to the entire motion without considering any of plaintiffs' evidence and granted summary judgment for defendants.  *Id*. at 470.

This differs from the present case, where Peck did in fact cite to the record in certain areas, but wholly failed to support her claims in others. In the areas where plaintiff provided citations, the Court considered them and was able to properly analyze the claims to some extent. In the areas where plaintiff failed to cite to the record, the Court deemed her allegations conclusory.

In other words, the Court did not "automatically" grant summary judgment in a broad stroke as a sanction on the ground that Peck's papers failed to cite to the record. Rather, it considered the parties' arguments and their cited evidence within the applicable summary judgment framework. This framework requires (once the moving party makes its initial showing) that the party opposing summary judgment identify specific facts and affirmative evidence contradicting those offered by the moving party to demonstrate that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In so doing, the non-moving party "may not rely on mere conclusory allegations nor speculation, but **must instead offer some hard evidence** showing that [her] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (emphasis added).[5]

---

[5] As an aside, this widely cited summary judgment framework arguably may constitute fair notice for plaintiff.

7

Indeed, as the Second Circuit recently reiterated—in a case Peck cites—"even in the discrimination context, a plaintiff must still present more than conclusory allegations to survive a motion for summary judgment." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996)); *see also Forte v. Liquidnet Holdings, Inc.*, 675 F. App'x 21, 25 (2d Cir. 2017) (affirming grant of summary judgment against plaintiff on discrimination claim where she did not support allegations with evidence because "[r]eliance on conclusory statements or mere allegations is not sufficient to defeat summary judgment"). For several of plaintiff's claims, she failed to meet this standard, and, as noted in the Order, this formed the basis for summary judgment against her.

Peck's selective citation to the record shows that she knew how to cite to specific evidence in support of her claims when she had it. Her doing so must have been grounded in some understanding that citations to the record are appropriate on summary judgment. Thus, this is not a case like *Amnesty America*, where plaintiff cited to no evidence for any claim whatsoever, and the district court dismissed the entire case on summary judgment without providing notice. *See* 288 F.3d at 470. A strict read of *Amnesty America* would compel an absurd result in this case, because it would require the Court to notify plaintiff of something she was already aware of and already

8

employed in certain portions of her memorandum of law. The Court would be able to analyze certain arguments and evidence, but would be forced to hold plaintiff's hand in areas where she did not properly support her claims. This cannot be what the Second Circuit intended; *Amnesty America* will not serve as a vehicle for plaintiff to piecemeal rehabilitate claims that she did not properly support when she properly cited to the record elsewhere in her opposition.[6]

Peck also seeks reconsideration of her claim for retaliation under 42 U.S.C. § 1983 based on the Equal Protection Clause of the Fourteenth Amendment. This time—for a claim where plaintiff did provide a few record citations—she is more persuasive.

In *Vega v. Hempstead Union Free School District*, the Second Circuit held (contrary to numerous other courts of appeals) that the Equal Protection Clause provides a cause of action under § 1983 for retaliation. 801 F.3d 72, 80–82 (2d Cir. 2015). The framework for evaluating these claims is the same one used for evaluating retaliation claims under the NYSHRL and Title VII. *See Collymore v. City of New York*, 2023 WL 5834784, at *3 (S.D.N.Y. Sept. 8,

---

[6] Similarly unpersuasive is plaintiff's attempt to bolster her position by noting that she referenced evidence in an accompanying Responsive Statement of Material Facts and/or Statement of Additional Material Facts. Including these requisite statements without any further direction or citation to over 400 combined paragraphs in the accompanying memorandum of law renders them effectively useless, because, as noted, the Court is "not obligated to perform an independent review of the record to find proof of a factual dispute." *See Guzman*, 2021 WL 5048993, at *9 (citations omitted).

2023) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973)); *see also Vega*, 801 F.3d at 91 ("[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII").

The first step requires a plaintiff to proffer evidence establishing a *prima facie* case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must demonstrate: (1) she participated in a protected activity, (2) the defendant knew of the activity, (3) plaintiff suffered an adverse employment action, and (4) a causal connection between the protected activity and the adverse action. *Szwalla v. Time Warner Cable LLC*, 670 F. App'x 738, 740 (2d Cir. 2016).

If the plaintiff can establish a *prima facie* claim, the burden shifts to the defendants to offer a permissible explanation for the adverse employment action. *Gibbs v. Consol. Edison Co. of N.Y.*, 714 F. Supp. 85, 89 (S.D.N.Y. 1989). If defendants do so, the burden shifts back to the plaintiff to offer proof that would enable a reasonable fact finder to conclude that the defendants' proffered reason was a pretext for prohibited discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

When evaluating Peck's NYSHRL and Title VII retaliation claims, the Court was forced to sort through a laundry list of purported retaliatory acts that plaintiff first referenced in her Amended Complaint. Plaintiff supported very few of these acts with record evidence, though she did offer some

10

citations. In considering the retaliatory acts that were properly supported, the Court did identify a narrow issue of material fact concerning plaintiff's investigation by Internal Affairs and a subsequent counseling memo, and allowed the NYSHRL and Title VII claims to survive summary judgment with respect to this narrow occurrence. *See* Order at 34. Given that the Equal Protection claims are evaluated under the same framework as NYSHRL and Title VII and the Court allowed those claims to survive, the Court reinstates plaintiff's § 1983 Equal Protection retaliation claims to the extent that they concern the same limited occurrence underlying the surviving NYSHRL and Title VII retaliation claims.

### III. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's motion for reconsideration is GRANTED in part and DENIED in part;

> a. Plaintiff's motion with respect to her hostile work environment claims is DENIED;
>
> b. Plaintiff's motion with respect to her Fourteenth Amendment retaliation claim is GRANTED;
>
> c. Plaintiff's Fourteenth Amendment retaliation claim is reinstated.

IT IS SO ORDERED.

Dated: October 19, 2023
      Utica, New York.

_____
David N. Hurd
U.S. District Judge