UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAMILLA S. PECK,

                             **Plaintiff,**

  vs.                                                5:21-CV-651
                                                                      (MAD/TWD)

COUNTY OF ONONDAGA, NEW YORK;
EUGENE CONWAY, *Onondaga County Sheriff*;
KATHERINE TRASK, *Chief*; JONATHAN
SEEBER, *Sergeant*; KATHY SEEBER, *Deputy*;
SUSAN DEMARI, *Chief Deputy*; DAWN CURRY-
CLARRY, *Director of Employee Relations*; PAUL
SMITH, *Human Resources Manager*; PAULA
PELLIZZARI, *Captain*; and ESTEBAN
GONZALEZ, *Chief*,

                             **Defendants.**
_____

APPEARANCES:                                 OF COUNSEL:

**BOSMAN LAW FIRM, LLC**               **AJ BOSMAN, ESQ.**
3000 McConnellsville Road                 **ROBERT J. STRUM, ESQ.**
Blossvale, New York 13308
Attorneys for Plaintiff

**MANCUSO BRIGHTMAN PLLC**      **SHANNON T. O'CONNOR, ESQ.**
16 Oswego Street – Suite 2                **ZACHARY T. RUETZ, ESQ.**
Baldwinsville, New York 13027
Attorneys for Defendants

**BOLANOS LOWE PLLC**                    **WILLIAM Q. LOWE, ESQ.**
16 S. Main Street – Suite B
Pittsford, New York 14534
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this employment discrimination action concerning her time working in the Onondaga County Sheriff's Office. Following an August 19, 2021 Order,[1] *see* Dkt. No. 20, which dismissed several claims (as well as Defendant Undersheriff Jason Cassalia), Plaintiff filed an amended complaint. *See* Dkt. No. 24. The amended complaint asserted nine causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and 42 U.S.C. § 1983.

Thereafter, Defendants moved for summary judgment. In a September 6, 2023, Memorandum-Decision and Order, Judge Hurd dismissed Plaintiff's Title VII, NYSHRL, and Section 1983 claims for discrimination and hostile work environment, leaving only Plaintiff's Title VII, NYSHRL, and Section 1983 retaliation claims remaining for trial. *See* Dkt. No. 90.[2] In permitting the retaliation claims to remain for trial, Judge Hurd made clear that these claims only survived in small part. Specifically, in granting in part and denying in part Plaintiff's motion for reconsideration, Judge Hurd stated as follows:

> When evaluating Peck's NYSHRL and Title VII retaliation claims, the Court was forced to sort through a laundry list of purported retaliatory acts that plaintiff first referenced in her Amended Complaint. Plaintiff supported very few of these acts with record evidence, though she did offer some citations. In considering the retaliatory acts that were properly supported, the Court did identify a narrow issue of material fact concerning plaintiff's investigation by Internal Affairs and a subsequent counseling memo, and allowed the NYSHRL and Title VII claims to survive summary judgment with respect to this narrow occurrence.

---

[1] This case was originally assigned to United States District Judge David N. Hurd. Following the conclusion of discovery and dispositive motion practice, the case was reassigned to the undersigned for purposes of trial. *See* Dkt. No. 138.

[2] Initially, Judge Hurd dismissed Plaintiff's Fourteenth Amendment retaliation claim, but subsequently reinstated this claim on Plaintiff's motion for reconsideration. *See* Dkt. No. 95.

2

Dkt. No. 95 at 10-11. As such, in the orders addressing the motion for summary judgment and motion for reconsideration, Judge Hurd made clear that the only alleged retaliatory conduct that survived for purposes of trial was (1) the conduct of an Internal Affairs investigation after Plaintiff was suspected of leaving work early without authorization (and other timekeeping violations) on June 18, 2020; and (2) the issuance of a non-disciplinary "supervisor's" or counseling memorandum to Plaintiff in November 2020, after the same investigation found that Plaintiff had, in fact, committed some or all of the suspected misconduct.

Trial is scheduled to commence on February 3, 2025. Currently before the Court are Defendants' supplemental motions *in limine*. *See* Dkt. No. 145.[3]

## II. BACKGROUND

For a complete recitation of the relevant factual background, the Court refers the parties to Judge Hurd's September 6, 2023, Memorandum-Decision and Order. *See* Dkt. No. 90.

## III. DISCUSSION

**A.    Standard of Review**

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential

---

[3] The parties previously submitted motions *in limine*, which were decided by Judge Hurd. *See* Dkt. Nos. 104, 113 & 131.

grounds. *See Baxter Diagnostics, Inc. v. Novatek Med., Inc.*, No. 94 Civ. 5220, 1998 WL 665138, *3 (S.D.N.Y. Sept. 25, 1998). Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Alternatively, the court is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

**B.    Evidence Pertaining to Isaac Eames**

In its previous motion *in limine*, Defendants asked the Court to preclude Plaintiff from introducing extraneous and irrelevant evidence, including evidence surrounding the death of former Deputy Isaac Eames, who killed himself after he was reportedly caught embezzling approximately $500,000 in grant money from the Onondaga County Sheriff's Office. *See* Dkt. No. 104 at 21. In its ruling, the Court granted Defendants' motion. *See* Dkt. No. 131 at 5. Now, Defendants seek to preclude not just evidence relating to former Deputy Eames suicide, but also any evidence relating to his "race and alleged use of racial slurs, the nature of his alleged misconduct and the circumstances surrounding the criminal and workplace investigations, in addition to the facts that 'he shot and wounded his wife, killed his son and dog, and killed himself with his department issued weapon.'" Dkt. No. 145-3 at 8. Defendants contend that the Court should "preclude the admission of any evidence referring to or relating to the conduct, treatment, or investigation of Isaac Eames ..., including both documentary evidence and testimony by any witness called during trial, because any such evidence is inherently unfairly prejudicial and would instead inflame the passions of the jury, he is an improper comparator, and he is deceased and unavailable for examination." *Id.* at 7.

Plaintiff argues that "Eames was a co-worker of Plaintiff. His desk moved next to hers when she was moved out of the Community Relations Unit following her complaints of discrimination. Defendants do not articulate why he is an 'improper comparator,' nor offer any explanation. Such a determination is a mixed question of fact and law better suited to resolution by the jury." Dkt. No. 153 at 3.

Pursuant to Rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Deutsch*, 987 F.2d 878, 884 (2d Cir. 1993).

The Court agrees with Defendants that Isaac Eames is not an appropriate comparator and that the proposed testimony and evidence is unduly prejudicial and only marginally relevant. As a general rule, whether individuals are similarly situated is a factual issue that should be submitted to the jury. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citation omitted). In determining whether employees are similarly situated, the fact-finder must consider "(1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.*

In its previous ruling, the Court granted Defendants' motion to exclude other extraneous and irrelevant material – specifically, the suicide death of former Deputy Isaac Eames. *See* Dkt. No. 131 at 5. Plaintiff is now seeking to introduce evidence and/or testimony regarding Eames' race and alleged use of racial slurs, the nature of his alleged misconduct before his suicide, and the

5

circumstances surrounding the criminal and workplace investigations. This evidence would only inflame the passions of the jury and sway their emotions with a story having nothing to do with Defendants' conduct at issue in this case. *See Adams-Flores v. City of New York*, No. 18-cv-12150, 2024 WL 519819, *2 (S.D.N.Y. Feb. 9, 2024).

Plaintiff claims that Eames and Plaintiff were both supervised by Defendants DeMari and Pellizzari and argues that "Defendants seek to improperly exclude relevant evidence of their differential treatment of a white male employee and seek to hamstring Plaintiff's case." Dkt. No. 153 at 4. Plaintiff contends that, although Mr. Eames is dead, "he made multiple statements to Plaintiff and is recorded by Plaintiff wherein he observed the differential and disparate manner in which Defendant Pellizzari related to him and how she treated Plaintiff. He further made statements to her relating to inquiries by Defendants about her suggesting she might 'distract' Eames. This treatment of Plaintiff is evidence relevant to Defendants' intent to retaliate and to their motive, plan, and lack of mistake in subjecting Plaintiff to retaliation in the form of an investigation and subjecting her to targeting for her complaints of discrimination on the basis of her race." *Id.*

Here, the Court finds that Eames is not an appropriate comparator and that any testimony or evidence about Eames would be unduly prejudicial and of little probative value. According to Plaintiff, "Isaac Eames was purportedly under investigation by Defendants in December 2021 regarding financial irregularities in accounts as reported by the Sheriff. 'Two months before the shooting, the fraud team from JP Morgan Chase notified county officials of a suspicious pending transfer of more than $41,372.15, according to records obtained in February by syracuse.com. The money was scheduled to move from a sheriff's office account into the deputy's private account, authorities said. County officials told the bank to block the transaction, which never

went through.'  He was finally questioned about the transactions days before he shot his wife, his son, and his dog, and himself on February 7, 2022." *Id.* at 2 n.1.

First, the events at issue involving former Deputy Eames occurred more than a year following Plaintiff's alleged protected activity and the alleged retaliatory conduct that followed. Moreover, based on Plaintiff's allegations, it is clear that he was under investigation for engaging in criminal conduct and this investigation was never concluded because he subsequently took his own life.  The fact that Eames took his own life before the investigation concluded necessarily means that Defendants did not have an opportunity to impose discipline on him for his alleged misconduct which was clearly not comparable to Plaintiff's misconduct.

Moreover, such evidence is necessarily connected to Eames' suicide and cannot be separated at trial without confusing or misleading the jury, as his death was the reason the criminal investigation concluded, no charges were filed, and Defendants were unable to take any further employment action.  As a result, any presentation of such evidence by Plaintiff in support of her disparate treatment theory (*i.e.*, that Eames was treated more favorably than Plaintiff) could not occur without Defendants being provided the opportunity to challenge the theory by presenting evidence detailing the circumstances surrounding the conclusion of the investigation (*i.e.*, Eames' suicide, which effectively rendered any further action moot).

The Court also agrees with Defendants that Eames is not an appropriate comparator for Plaintiff's disparate treatment theory.  While Eames was supervised by Defendants DeMari and Pellizzari, he was not in the same position as Plaintiff, as he was not a member of the Community Relations Unit and did not have the same duties as Plaintiff.  Nor was he accused of the same misconduct as Plaintiff.  In order to challenge Plaintiff's theory of disparate treatment, Defendants would need to present evidence connected to the underlying misconduct, such as Eames falsifying

documents to conceal his criminal acts from Defendants. The Court will not permit this case to become a mini criminal trial as a vehicle for Plaintiff to create a false equivalency between a routine time audit and a complex scheme of embezzlement. *See Akinyemi v. Napolitano*, 347 Fed. Appx. 604, 607 (2d Cir. 2009) (affirming the decision precluding evidence concerning the misconduct and discipline of a fellow employee found to have engaged in negligent conduct, where the plaintiff engaged in intentional conduct). Finally, the Court notes that Eames is now deceased and is therefore unavailable for questioning during trial to otherwise confront Plaintiff's theory.

Accordingly, the Court grants this aspect of Defendants' motion *in limine*.

## C.    Proposed Witnesses Not Previously Disclosed

In their next supplemental motion *in limine*, Defendants argue that the Court "should preclude any testimony from any of Plaintiff's proposed witnesses which were not included in her mandatory Rule 26 disclosures – *i.e.*, Dr. Claudine Ward, M.D. ... and Andrea Morey[.]" Dkt. No. 145-3 at 11. Defendants contend that all four factors that the Court must consider in deciding whether to exclude this testimony weighs in their favor. *See id.* at 12-13. In response, Plaintiff argues that she complied with her Rule 26 requirements in that she "identified both Ward and Morey in her Response to Defendants' Interrogatories in February 2022." Dkt. No. 153 at 6. Plaintiff further contends that she "notified Defendants of Dr. Ward's identity in her original and amended Treating Healthcare Providers Disclosures. ... In fact, Dr. Ward is the very first provider identified on the July 29, 2022 disclosure. The disclosure further details the subjects of Dr. Ward's treatment of Plaintiff and was provided together with Dr. Ward's records of Plaintiff's treatment." *Id.* at 7.

Federal Rule of Civil Procedure 26(a) contains mandatory disclosure requirements regarding disclosure of witnesses and documents. *See* Fed. R. Civ. P. 26. Under Rule 26(a)(1), litigants have an obligation to provide or identify in their initial disclosures the name, address and telephone number of each person "likely to have discoverable information ... along with the subjects of that information – that the disclosing party may use to supports its claims or defenses." *Id.* In addition, Rule 26 requires that the disclosing party provide a copy of "all documents ... that the disclosing party has in its custody or control and may be used to support its claims or defenses." *Id.* This information must be supplemented if a party becomes aware of new information. *See* Fed. R. Civ. P. 26(e)(1)-(2).

"Rule 37 provides that any 'party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness ... not so disclosed.'" *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (quoting Fed. R. Civ. P. 37(c)(1)). Exclusion under Rule 37 is automatic unless the party who failed to disclose "can demonstrate substantial justification for the failure to disclose or that the failure to disclose is harmless." *Miles v. County of Broome*, No. 3:04-cv-1147, 2006 WL 561247, *3 (N.D.N.Y. Mar. 6, 2006).

In determining whether to exclude such witnesses under Rule 37(c)(1), courts in the Second Circuit consider "'(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.'" *Patterson*, 440 F.3d at 117 (quotation omitted). "[A]lthough a 'bad-faith' violation of ... Rule 26 is not required in order to exclude evidence pursuant to Rule 37,

it can be taken into account as part of the party's explanation for its failure to comply." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

Here, the Court finds that Plaintiff has substantially complied with her disclosure requirements and that this portion of Defendants' motion *in limine* must be denied. It is clear that Defendants have been aware of these witnesses since February 2022 and were provided a description of the information that each possesses that is relevant to Plaintiff's claims. Defendants will suffer little prejudice by permitting this testimony, since it is largely duplicative of other evidence already in their possession, including the treatment records from Plaintiff's treating psychologist, Deborah E. Spinks, Ph.D.

Accordingly, the Court denies this aspect of Defendants' motion *in limine*.[4]

### D.   Admission of Plaintiff's Exhibits 4 and 27

Defendants seek to preclude admission of Plaintiff's proposed exhibits 4 and 27. *See* Dkt. No. 145-3 at 13. According to Plaintiff's exhibit lists, the exhibits are Plaintiff's Division of Human Rights ("DHR") complaint and her EEOC complaint. *See* Dkt. No. 126 at 1, 4; Dkt. No. 107 at 1, 4. Defendants contend that these exhibits "are complaints and/or litigation documents from Plaintiff's EEOC and DHR proceedings, and as such are: (1) inadmissible hearsay that should be precluded pursuant to Federal Rule of Evidence 801 ...; (2) material whose probative value is outweighed by the risk of prejudice and confusion resulting from their admission that

---

[4] Although the Court is denying this aspect of Defendants' motion, it is unclear at this point how relevant Dr. Ward's testimony will be to Plaintiff's remaining claim of retaliation. Based on the evidence before the Court, it appears that Plaintiff began treating with Dr. Ward following a concussion she sustained in 2019, prior to the events at issue in the present matter. Clearly, any lingering effects Plaintiff is experiencing as a result of a concussion that predated the alleged retaliation in this case is not relevant to her injuries in the present matter. The Court has similar concerns regarding the relevant of Ms. Morey's testimony, who is identified as Plaintiff's friend and that her testimony will concern damages. Despite these concerns, the Court has denied Defendants' motion at this time.

should be precluded pursuant to Federal Rule of Evidence 403 ...; and (3) inadmissible as records and reports of public offices setting forth factual findings from investigations in civil actions under Federal Rule of Evidence 803(8)(c)." Dkt. No. 145-3 at 13-14.  In response, Plaintiff contends that "Defendants' third motion *in limine* is an attempt to relitigate their prior motion to exclude background evidence of discrimination in support of her retaliation claims. ... Evidence of the underlying discrimination that formed the basis of Plaintiff's protected speech is relevant and admissible to support her claims of retaliation." Dkt. No. 153 at 9.

In their motion *in limine*, Defendants rely on cases discussing the admissibility of findings reached by administrative bodies, such as the EEOC and the DHR, rather than the underlying pleadings before the administrative bodies.  *See* Dkt. No. 145-3 at 14-15 (citing *Doe v. Univ. of Conn.*, No. 3:09-cv-1071, 2013 WL 4504299, *17-19 (D. Conn. Aug. 22, 2013); *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60, 65 (2d Cir. 1998)).  To the extent that Plaintiff is attempting to introduce her EEOC and DHR complaints, and not the findings of the EEOC and DHR, these cases are not entirely on point.

Nevertheless, the Court agrees with Defendants that the admission of these exhibits is not necessary to establish Plaintiff's filing of either the EEOC or DHR action, since Defendants have indicated that they will stipulate to the fact of these filings.  Moreover, Plaintiff will have a full opportunity to present to the jury during trial of this matter all relevant facts relating to her claims for alleged retaliation.  Admission of these exhibits – and the multitude of irrelevant allegations and hearsay statements contained therein – would serve only to confuse and/or inflame the jury in a manner prejudicial to Defendants.  These pleadings necessarily contain allegations relating to claims that have since been dismissed from the present matter and contain other allegations and

11

facts that Judge Hurd previously determined would not be admissible at this trial.[5] Courts routinely preclude the admission of pleadings and court filings because such documents constitute impermissible hearsay and are otherwise unduly prejudicial because they contain irrelevant allegations relating to claims that have previously been dismissed. *See Richmond v. Gen. Nutrition Ctrs. Inc.*, No. 08-cv-3577, 2012 WL 762307, *9 (S.D.N.Y. Mar. 9, 2012) (granting motion *in limine* to preclude "introduction of pleadings and court filings in other lawsuits," and noting that "[i]f offered to prove the fact of racial discrimination ... such pleadings are inadmissible hearsay" because "allegations of discrimination contained in legal complaints and other documents ... by their nature are not subject to cross-examination," and further precluding admission of the documents "based on Fed. R. Evid. 403, in that the risk of unfair prejudice and confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims); *Guitierrez v. City of New York*, No. 08-cv-6537, 2012 WL 2357063, *1 (S.D.N.Y. June 20, 2012); *Noel v. Inc. Vill. of Lake Success*, No. 13-cv-211, 2016 WL 740436, *3 (E.D.N.Y. Feb. 24, 2016) (collecting cases for the proposition that "[p]reviously dismissed claims, and evidence thereof, are not of consequence in determining the action and therefore [should] be excluded" and holding that "evidence of previously dismissed disability discrimination claims where only plaintiff's retaliatory discharge claims were at issue at trial" must be precluded).[6]

Accordingly, the Court grants this aspect of Defendants' motion *in limine*.

---

[5] The Court has reviewed the EEOC and DHR complaints, which were attached as exhibits to Plaintiff's response to Defendants' motion for summary judgment. *See* Dkt. Nos. 83-26, 83-27, 83-81.

[6] While the Court is granting this aspect of Defendants' motion, Plaintiff will still be permitted to testify regarding the events set forth in these complaints, to the extent that they are relevant, not unduly prejudicial, or not otherwise subject to preclusion.

E.     **Lay Witness Testimony**

Defendants next ask the Court to "limit the testimony of the lay witnesses to only their perceptions and observations and preclude any testimony that is not supported by their personal observations or opines on a legal conclusion at issue in this case." Dkt. No. 145-3 at 16. Defendants contend that "Plaintiff has identified several lay witnesses including Stephen Peck, Heather Poland, Collete Reynolds, Kevin Moore, and Andrea Morey.  Plaintiff's witness list broadly states that the witnesses are either expected to testify as to alleged 'retaliation and disparate treatment by Defendants against Plaintiff and damages' or simply 'damages.'" *Id.* Because none of these witnesses are identified as expert witnesses, Defendants argue that their "testimony should be limited to only their observations of behavior or relevant events they personally observed.  They should not be permitted, as a lay witness, to opine or attest to some conclusion that requires specialized training or expertise in the field of mental health, or provide their personal judgement as to an ultimate issue in the case, such as the alleged unlawful motives of Defendants." *Id.* at 16-17.

In response, Plaintiff's counsel assures the Court that she is familiar with the Rules of Evidence and indicates that she "has no intention of presenting or attempting to present expert opinion from lay witnesses." Dkt. No. 153 at 12.  Plaintiff assures the Court that the testimony will be based on the witnesses' observations and personal knowledge and that it will not be based on scientific, technical, or other specialized knowledge.  *See id.* at 12-13.

In light of Plaintiff's response, the Court denies this aspect of Defendants' motion *in limine*.

F.     **Comments by Non-Decisionmakers**

Defendants contend that "[t]he Court should preclude testimony of any witness at trial regarding comments made by any individual who is not a decisionmaker, or any comments made by decisionmakers unrelated to the decision-making process at issue, as they relate to Plaintiff's burden to demonstrate discriminatory or retaliatory animus." Dkt. No. 145-3 at 19. Defendants note that "Plaintiff may seek to introduce evidence of any comments made by nondecisionmakers – *e.g.*, Susan DeMari (former Deputy Chief of Civil Division), Esteban Gonzalez (former Deputy Chief of Custody Division), Katherine Trask (Deputy Chief of Administrative Decision), Captain Paula Pellizzari (former Administrative Executive Officer), Sergeant Jon Seeber (Public Information Officer and Community Relations Supervisor), Vanessa Baker (Employee Relations), Sergeant Steven Smolen (Internal Affairs), Monica Williams (Chief Diversity Officer), Lieutenant Jammie Blumer (Internal Affairs), Kelly Seeber (Deputy), Michelle Williams (Human Resources), Paul Smith (former Personnel Department), or Isaac Eames (Deputy) – in order to meet her burden to prove discriminatory or retaliatory animus on behalf of Defendants." *Id.* at 19-20.

"'Courts must weigh the following factors when determining whether a comment evinces an intent to discriminate: (1) whether a decisionmaker made the remark; (2) whether the remark was made close in time to the employment decision(s) at issue; (3) the content of the remark; and (4) whether the remark was made in connection with the decisionmaking process.'" *Van Brunt-Piehler v. Absolute Software, Inc.*, ___ F. Supp. 3d ___, 2024 WL 3765523, *10 (W.D.N.Y. 2024) (quoting *Quinby v. WestLB AG*, No. 04 Civ. 7406, 2007 WL 3047111, *1 (S.D.N.Y. Oct. 18, 2007)) (other citation omitted); *see also Silver v. N. Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 363 (S.D.N.Y. 2007).

In the present matter, the Court finds that it is unable to decide this issue at this stage. As noted above, among the factors to be considered in determining the admissibility of such

14

testimony is whether the remark was made close in time to the employment decision at issue, the content of the remark, and whether the remark was made in connection with the decisionmaking process. Without the necessary context of the testimony at issue, the Court is unable to make this decision at this time.

Accordingly, the Court reserves judgment on this aspect of Defendants' motion *in limine*.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendants' supplemental motions *in limine* (Dkt. No. 145) is **GRANTED in part, DENIED in part, and RESERVED on in part**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 28, 2025
Albany, New York

Mae A. D'Agostino
U.S. District Judge